# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NOS. 11-681 and 11-733 |
| | : | |
| ANTHONY DWAYNE BAXTER | : | |

### MEMORANDUM OPINION

**Savage, J.**                                                                                   **March 24, 2015**

In his *pro se* motion under 28 U.S.C. § 2255, Anthony Baxter, who is serving a 71 month guideline prison sentence, asserts that his counsel was ineffective at sentencing for failing to contest the total loss figure that increased his sentencing guideline range, and for not filing an appeal. Essentially, Baxter is challenging the calculation of his sentencing guideline range and seeks resentencing.

Baxter's counsel was not ineffective. On the contrary, his performance was professional and Baxter suffered no prejudice. Therefore, his § 2255 motion will be denied.

In Indictment No. 11-681, Baxter was charged with one count of mail fraud arising from his claim for benefits under the Pennsylvania Victims Compensation Assistance Fund.[1] Baxter had submitted an application for reimbursement of funeral expenses for his business partner, who had been murdered.[2] In the application, he misrepresented that

---

[1] Resp. To Mot. To Vacate (Resp.) At 2 (Doc. No. 39).

[2] *Id.* at 3.

there was no life insurance policy covering the victim.[3]  Contrary to his representation, Baxter was the beneficiary of a life insurance policy on the murder victim's life.[4]  He subsequently received a check in the amount of $71,172.80 as the proceeds of the policy.[5]

In Indictment No. 11-733, he was charged with three counts of mortgage fraud, passport fraud, bankruptcy fraud, and four counts of misusing social security numbers.[6] With respect to the passport fraud, Baxter used a fictitious date of birth and the social security number belonging to a person who was then serving with the Army National Guard in Iraq and Afghanistan when he applied for a passport.[7]  The charges of misusing social security numbers arose out of his using other persons' social security numbers in making a claim for life insurance proceeds, in submitting rental applications for two rental properties, and opening bank accounts.[8]  The mortgage fraud involved Baxter's making numerous misrepresentations regarding his identity, social security number, date of birth and other false statements in connection with his applications for mortgages covering two properties.[9]

Baxter pleaded guilty to the single count in Criminal No. 11-681 and to all ten counts

---

[3] *Id.* at 3-4.

[4] *Id.* at 4.

[5] *Id.*

[6] *Id.* at 4-5.

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.* at 5-7.

in Criminal No. 11-733.  There was no plea agreement.[10]

The indictments were consolidated for sentencing.  The single count in No. 11-681 and counts one, two and three of No. 11-733 were grouped because the offense level was determined on the basis of the total amount of harm or loss.  Counts four and five of No. 11-733 were grouped because each count represented a specific offense characteristic.  Counts six through ten were grouped for the same reason.

The Probation Office calculated the total offense level using a total loss figure of more than $120,000 and less than $200,000, resulting in a ten level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(F).  Applying other specific offense characteristics and giving Baxter downward adjustments for acceptance of responsibility, the total offense level was eighteen.  His twenty-three criminal history points placed him in a criminal history category of VI.[11]  Based on those calculations, the applicable custodial guideline range was 57 to 71 months.

At sentencing, Baxter's attorney argued that the loss was less than $120,000.  After consideration of the parties' arguments, the loss figure was fixed at the level calculated in the Presentence Investigation Report.  The government's motion for an upward variance was denied.  After taking into consideration the guideline range and the relevant factors under 28 U.S.C. § 3553(a), Baxter was sentenced to a prison term of 71 months.

Baxter did not file a direct appeal. He filed a timely motion under 28 U.S.C. § 2255. An evidentiary hearing, at which Baxter was represented by appointed counsel, was held.

---

[10] *Id.* at 2.

[11] *Id.* at 11.

**Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are evaluated under the familiar two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must demonstrate that his attorney's performance was deficient, that is, "counsel's representation fell below an objective standard of reasonableness," considering all of the surrounding circumstances of the particular case and the facts viewed at the time of counsel's conduct. *Strickland*, 466 U.S. at 687–89. Second, if there was deficient performance, the petitioner must show that it prejudiced his defense. *Id.* at 691–92.

Counsel's performance is deficient only where the defendant can show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Where counsel's conduct falls within the wide range of reasonable professional assistance under the circumstances, it is presumed to be sound strategy. *Id.* at 689.

The performance analysis starts with the presumption that counsel's conduct was part of a sound strategy. This "weak" presumption can be rebutted by showing either that the conduct was not part of a strategy or was part of an unsound strategy. *Thomas v. Varner*, 428 F.3d 491, 499–500 (3d Cir. 2005). Where the record does not explicitly reveal trial counsel's actual strategy or the lack of one, the presumption may be rebutted only by a showing that no sound strategy could have supported the conduct. *Id.* at 500. Where counsel's conduct was part of a strategy devised after an investigation of the law and the facts, "the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'" *Id.* (quoting *Strickland*, 466 U.S. at 690).

"[O]vercoming the strategic presumption does not, in itself, entitle [the defendant]

4

to relief. It merely gives him the opportunity to show that counsel's conduct fell below objective standards of attorney conduct." *Id.* at 501. In other words, the petitioner still must establish that counsel's performance was objectively unreasonable.

The prejudice prong requires a showing that as a result of the deficient representation, a reasonable probability exists that the results of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* In other words, the prejudice component focuses on whether counsel's deficient performance renders the result unreliable or fundamentally unfair. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations omitted).

To satisfy the prejudice component, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The prejudice standard is not "a stringent one." *Jacobs v. Horn*, 395 F.3d 92, 105 (3d Cir. 2005) (citations omitted). The defendant "need not show that counsel's deficient performance more likely than not altered the outcome in the case–rather, he must show only a probability sufficient to undermine confidence in the outcome." *Thomas,* 428 F.3d at 502 (citations and internal quotation marks omitted).

## Sentencing

In his § 2255 motion, Baxter casts his challenge to the calculation of his sentencing guideline range as an ineffectiveness of counsel claim. He claims that his attorney failed to challenge the calculation of the total offense level, which resulted in a ten level increase above the base offense level. As a result, according to Baxter, his advisory guideline

range was greater than it should have been.

Baxter asserts that his counsel was ineffective at his sentencing in five instances. He contends that counsel failed to object to: (1) the entire loss when the victims had not sued him; (2) the loss amount related to the mortgage fraud involving First Franklin; (3) the inclusion of penalties, fees and interest in the intended loss in connection with the Wells Fargo mortgage fraud; (4) the inclusion of interest in the $35,000 loss on the $189,000 mortgage loan from Bank of America; and (5) the loss related to his credit card debt listed in his bankruptcy petition which was later dismissed.

As a threshold matter, Baxter argues that there was no calculable loss because none of his victims sued him in civil court and obtained judgments against him. His argument is frivolous. There is no requirement that before a loss can be included for sentencing purposes, it must be reduced to judgment. There are many reasons a victim may not pursue civil remedies. One reason is that such a course would be fruitless in light of the defendant's financial situation. Another is that the victim may not wish to expend more money and time which may only result in increasing the loss. Thus, merely because a victim has not brought a civil action against a defendant or has not reduced the claim to judgment does not mean there is no loss.

Counsel is not required to make a frivolous argument. *Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010) (trial counsel not ineffective for failing to raise a meritless objection); *see also United States v. Sanchez*, 53 F. App'x 208, 210 (3d Cir. 2002). Hence, Baxter's claim that his counsel was deficient for failing to argue that there was no loss because the victims did not reduce their losses to a civil judgment is without any basis.

There was no argument to be made with respect to the inclusion of interest and

penalties in a total loss in connection with the Wells Fargo and Bank of America mortgage frauds. Nor was there an argument to be made about a credit card debt loss. None of those items were used to calculate the total loss. Under those circumstances, counsel can hardly be faulted for failing to make an argument that did not affect the calculation of the total loss.

Baxter's remaining contention is that the loss from the fraud related to the mortgage held by First Franklin was overstated. He contends that his counsel failed to successfully challenge the value attributed to the collateral, the mortgaged property, which was used to reduce the loss. He argues that had the higher value reflected in the tax assessment been applied, rather than the Zillow[12] figure used, the loss would have been substantially lower.

There is no gold standard for assessing fair market value. Real estate appraisers frequently disagree on a property's value. Tax assessments may not realistically set value. Thus, the court "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. 3(C); *United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007).

At the time of sentencing, the property had not been liquidated. Consequently, the property's value for purposes of determining the loss was established at the time of Baxter's guilty plea on May 17, 2012. See U.S.S.G. § 2B1.1 cmt. 3(E)(iii).

Although there is a presumption in mortgage fraud cases that the tax assessment is a reasonable estimate of fair market value of the property, it is rebuttable. As the application note advises, the sentencing court may consider other factors in determining

---

[12] Zillow is an online real estate database. It provides value estimates and prices of comparable properties in the area.

fair market value.  U.S.S.G. § 2B1.1 cmt. 3(E)(iii).  Among those factors are the recency of the assessment and the assessor's assessment practices.

Here, the 2012 assessment had been unchanged since 2008, reflecting an outdated valuation.  The Zillow process, though imperfect, takes into consideration sales prices of comparable properties and is updated thrice weekly.  First Franklin, the mortgagee, supplied the government with a loss calculation that factored in a lower market value than both the tax assessment and the Zillow valuation.

Counsel's strategy was reasonable and professional.  Having gotten the government to agree to the higher Zillow valuation rather than the bank's lower one, he did not risk a ruling that the fair market value was lower.  Had he invited further analysis by arguing that the 2012 tax assessment should control, evidence would have shown that the tax assessment was outdated, did not reflect the decreasing sales prices of comparable properties, and was dramatically reduced in 2013 from the assessed value.  The assessment remained static from 2008 through 2012 despite the dynamic changes in the economy during that time.  The property was vacant, unkempt and subject to a foreclosure sale, all factors affecting its fair market value.  Those factors were not accounted for in the Zillow evaluation.  In this context, counsel's performance was reasonable and professional.

To the extent Baxter may be arguing that his counsel did not follow his instructions to obtain information for challenging the property valuation, his argument is without support.  None of the documents he has submitted with his motion would have altered the outcome.

There was no prejudice.  Considering all the factors surrounding the property's value as of May, 2012, the assessment was not a reliable indicator of the property's reasonable

value.  The Zillow value was more reliable.  Had counsel argued that the tax assessment should have been used, the Zillow valuation would still have been used.  The result would not have been any different – the loss would have been the same.  Therefore, Baxter's counsel's performance was not deficient and he was not prejudiced by anything counsel did or did not do.

**Appeal**

There is no question that counsel is ineffective when he fails to take an appeal after having been specifically instructed to do so.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).  Counsel also has a duty to consult with his client regarding an appeal when counsel has reason to believe, either, that a rational defendant would want to appeal, or the client has reasonably demonstrated to him that he was interested in taking an appeal.  *Id.* at 480.  Whether there was a trial or guilty plea is significant in assessing counsel's conduct.  *Id.*  Where the defendant pleaded guilty, we consider whether the defendant received the sentence he bargained for and whether he reserved or waived his appellate rights.  *Id.*

Absent an appellate waiver, no showing of prejudice is necessary because prejudice is presumed.  *United States v. Mabry,* 536 F.3d 231, 242 (3d Cir. 2008) (finding defendant may not bring ineffective assistance claim based on failure to file a requested appeal if defendant waived his right to habeas).  When a defendant is deprived of "an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."  *Roe,* 528 U.S. at 484.

Baxter claims that although he instructed his attorney to file a notice of appeal, none was filed.  His former attorney denies that Baxter directed him to appeal.  The attorney

testified that he and Baxter discussed a possible appeal. During the conversation, counsel advised Baxter that if he did take an appeal, the government could cross-appeal, raising the denial of its motion for an upward variance. When the discussion ended, Baxter had not decided whether he wanted to appeal. He informed his attorney that someone would get in touch with him to let him know if he wanted to appeal. No one did. Counsel had no reason to believe Baxter wanted him to file an appeal, especially where there were no non-frivolous grounds for one.

Having had the opportunity to observe the demeanor of Baxter and his former attorney and to assess their credibility, I conclude that Baxter did not express his desire to file a notice of appeal. Additionally, there was no basis for taking one. Therefore, counsel was not ineffective because he did not file a notice of appeal.

## Conclusion

Baxter's counsel was not ineffective at sentencing or for not filing an appeal. Therefore, the § 2255 motion will be denied.